**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| **JEANETTE HARVEY,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:24-cv-221** |
| | ) | |
| **THE MITRE CORPORATION,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant** | ) | |
| | ) | |

_____

**SERVE:**

**THE MITRE CORPORATION**
**C/O C T Corporation System**
**4701 Cox Rd Ste 285,**
**Glen Allen, VA, 23060 - 6808**

## COMPLAINT

COMES NOW the Plaintiff, Jeanette Harvey (Mrs. Harvey) by Counsel for this

Complaint against the MITRE Corporation ("MITRE" or "Defendant") and states and alleges as

follows:

### Nature of the Action

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful

employment practices on the basis of religion and to provide appropriate relief to Plaintiff Jeanette

Harvey, who was adversely affected by such practices. As demonstrated below, Defendant, The

MITRE Corporation, violated Title VII when it discriminated against Mrs. Harvey by requiring

her to violate her sincerely held religious beliefs, denying any accommodation to those beliefs,

and ultimately terminating her employment because of those sincerely held religious beliefs.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is appropriate in this Court under 28 U.S.C. § 1391 because The MITRE Corporation has its principal office address in McLean VA within the Eastern District of Virginia. Further, a substantial part of all acts and/or omissions of illegal employment practices alleged, were committed while the Plaintiff resided in Montclair, VA in the Eastern District.

## PARTIES

3. Plaintiff, Jeanette Harvey, resides in the Eastern District of Virginia and has followed all necessary procedures in pursuing her claim including being issued her Notice of her Right to Sue from the United States Equal Employment Opportunity Commission (EEOC).

4. At all relevant times, Defendant The MITRE Corporation (MITRE), a Virginia corporation, has continuously been doing business in the State of Virginia, as well as other jurisdictions, and has continuously employed at least 15 employees.

5. MITRE's principal office address is 7515 Colshire Dr, McLean, VA, 22102 - 7539.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Mrs. Jeanette Harvey filed a charge of discrimination with the EEOC alleging violations of Title VII by Defendant.

2

7. On September 25, 2023, the Equal Employment Opportunity Commission (EEOC) issued a Letter of Determination finding reasonable cause to believe that Title VII was violated and invited the Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On November 17, 2023, the EEOC issued a Notice of Failure of Conciliation advising the parties that the EEOC was unable to secure a conciliation agreement acceptable to the Commission and issued the Plaintiff a Notice of Right to Sue.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

10. From October 21, 2021 through November 22, 2021, Defendant engaged in unlawful employment practices at their McLean, Virginia office, when Defendant denied Plaintiff a religious exemption and refused to make proper effort to reasonably accommodate her beliefs. During the entire exemption application process, Defendant acted discriminatorily in violation of Section 703(a)(1) and (a)(2) of Title VII, 42 U.S.C. § 2000e-2(a)(1) and (a)(2).

11. At all relevant times for the purposes of her claims, Mrs. Harvey was employed by MITRE through the McLean office. Mrs. Harvey was a long-time employee of over 20 years for MITRE.

12. Mrs. Harvey served as technical editor, reviewing documents mostly for the Center for Advanced Aviation System Development, the federally funded research and development center that MITRE operates for the Federal Aviation Administration (FAA) as well as assisting several other centers, as needed.

13. Since 2010, Mrs. Harvey has been on a remote work status where she successfully completed her work from her home in Montclair, Virginia.

14. Mrs. Harvey's work was computer-based using Microsoft Word, PowerPoint, Excel, and SharePoint. When needed, Mrs. Harvey attended meetings via skype or Microsoft teams as well as initiated or received phone calls to communicate with colleagues or management. There was never a need or request for Mrs. Harvey to go to the office with the use of face-time tools.

15. The job duties of her remote work assignment required no in-person interaction with fellow employees or clients. Mrs. Harvey has not even been required to attend any in-person MITRE event or meeting or come to a MITRE facility since approximately 2016.

16. Indeed, her position and remote work status predated the pandemic and was the status quo for years before the pandemic.

17. At no point between the beginning of the pandemic and the termination of her employment, did MITRE attempt to change Mrs. Harvey's position from a remote-only position to require any in-person assignment.

18. On or about October 11, 2021 – one and a half years into the COVID-19 pandemic – MITRE imposed a mandate requiring all employees, including Mrs. Harvey, to receive the COVID-19 vaccine ("Mandate"). (See Ex. A). MITRE specifically identified the importance of their sponsors in "maintaining the health and safety of their employees and onsite contractors."

19. The language of the Mandate notice indicated it would evaluate requests for reasonable religious accommodations, as required by law, so long as the request was made before November 22, 2021.

20. Mrs. Harvey timely submitted her request for reasonable accommodation on October 21, 2021, nearly a month before the deadline. Along with the standard paperwork, Mrs. Harvey included a two-page attachment explaining her sincerely held religious beliefs.

21. This letter articulated the reasons she could not get the vaccine without violating her sincerely held religious beliefs which included:

   a. Taking the COVID-19 vaccine would violate her sincerely held religious beliefs concerning the sanctity of human life since the "currently available COVID vaccines used aborted human fetal cell lines in their development and testing" and in some cases the actual vaccine. She believed that taking such a vaccine "would make [her] complicit in taking an innocent human life." Mrs. Harvey referenced provisions of the Bible that she considered dispositive in her sincerely held religious belief on this matter: Exodus 20:13; Jeremiah 1:5; Job 31:15; Psalm 22:10-11; Job 33:4; and Exodus 21:22-25.

   b. To inject harmful and morally compromised materials into her body would violate her scripturally imposed responsibility to tend to her body as "the temple of the Holy Ghost which is in you." 1 Corinthians 6:19-20.

   c. Taking the COVID-19 vaccine in her context would be trusting in man-made mRNA vaccine in a way that is contrary to the scripturally mandated response to humbly seek the Lord for healing and direction based on James 5:14-16 and 1 Chronicles 7:14.

22. While not required by religious accommodation law, her pastor endorsed the letter to verify that to his knowledge she sincerely believed what was articulated in the letter.

23. Mrs. Harvey explained how the concern for spreading disease to other employees did not apply to her due to her remote work status: "As I have stated before and you know to be true, I work 100% remotely and have for many years. Thus, there is no exposure to me or others that are possible that a COVID vaccination would solve."

24. The accommodation Mrs. Harvey requested was simply to be able to continue doing her work remotely, as she had for years, without taking the vaccine. This would cause no hardship to MITRE whatsoever. Since there was no part of her job duties that involved in-person interaction with customers, sponsors, or fellow staff, there was no need for consideration of further accommodating measures such as weekly testing or mask-wearing.

25. Throughout the process, MITRE indicated that it disagreed with Mrs. Harvey's beliefs and seemed to be uncomfortable that she would have, assert, or live by these religious beliefs.

26. In the days that followed, Mrs. Harvey's sincerely held religious beliefs were interrogated by MITRE. Instead of an interactive process to consider possible accommodations, the validity and sincerity of Mrs. Harvey's religious beliefs were challenged.

27. During the interview, MITRE representative Colleen Long communicated to Mrs. Harvey that the interview was being recorded and proceeded to ask questions, most of which Mrs. Harvey had answered in the Request for Religious Exemption/Accommodation Related to COVID-19 Vaccine form.

28. Some of the questions indicated MITRE fundamentally missed the point of Mrs. Harvey's religious beliefs. Other questions inappropriately centered on the beliefs of others, not her own.

29. These questions left Mrs. Harvey feeling as though Ms. Long was trying to trap her. Mrs. Harvey felt belittled, disrespected, and alone.

30. The interactions led Mrs. Harvey to understand that Ms. Long did not believe Mrs. Harvey was sincere in her religious beliefs or that her beliefs were sufficiently religious.

31. Throughout the process MITRE displayed an unrealistic and inappropriately narrow view of what constitutes a religious belief.

32. MITRE denied Mrs. Harvey's request on November 5, 2021. (See Ex. B). MITRE's letter provided no explanation, merely stating that "based on our review of the information you provided, your request for an exemption is denied."

33. Contrary to the law and applicable EEOC guidance, MITRE unfairly scrutinized the sincerity and religious nature of Mrs. Harvey's religious accommodation request despite there being no objective basis for questioning either the religious nature or the sincerity of a particular belief, observance, or practice. The initial determination did not raise "undue hardship" as a defense.

34. Three days later, on November 8, 2021, MITRE sent out another company update pertaining to the vaccine Mandate. (See Ex. C). In this release, MITRE expressed its commitment to "recognize and respect" the "personal decisions" of its employees and would honor lawful requests for accommodation for religious beliefs.

35. On November 9, 2021, the very next day, Mrs. Harvey's Counsel sent a letter to MITRE. (See Ex. D).

36. This letter requested that MITRE reconsider its denial of Mrs. Harvey's request for a religious exemption and comply with both the Supreme Court and the EEOC's guidance which have consistently held that an accommodation should be provided unless it would impose "undue hardship" on the employer.

37. Before responding to the letter from Mrs. Harvey's Counsel, on November 16, 2021 MITRE Vice President Christina Orfanos sent Mrs. Harvey directly a "Memo of Warning" threatening Mrs. Harvey with "disciplinary action, up to and including termination of employment" if she did not produce proof of vaccination status by November 22, 2021. (See Ex. E).

38. The next day, on November 17, 2021, MITRE's Counsel sent a response to Mrs. Harvey's Counsel. (See Ex. F).

39. This letter offered no explanation from MITRE other than bald conclusions such as: "After assessing [Mrs. Harvey's] request, the Company determined insufficient grounds to grant a religious-based accommodation under applicable law."

40. Even though Mrs. Harvey had been a remote employee for over a decade, MITRE for the first time, inexplicably relied upon a so-called "undue hardship" of health and safety for the employees and others at MITRE's physical sites to justify failing to accommodate Mrs. Harvey's religious beliefs:

> "…giving Ms. Harvey the benefit of the doubt by assuming that she continues to object to receiving the COVID-19 vaccine due to a sincerely held religious belief that specifically conflicts with it, the Company has concerns about the ***threat to the safety of its sponsors***, customers and staff. It also has unavoidable compliance obligations. All of this, along with ***the nature of Ms. Harvey's current work*** at MITRE, drove the analysis on her exemption request." (Emphasis added.)

41. Such an undue hardship was impossible given that Mrs. Harvey never interacted in person with the MITRE's sponsors, customers, or staff.

42. Rather than look to the facts of Mrs. Harvey's decade serving as a permanent telecommuting employee, MITRE relied on the "undue hardship" exemption to justify as a one-sized fits all power-play that would purportedly prevent MITRE's responsibility to

grant any accommodation even when it would not have cost the company a cent or required the company to change anything to achieve the same level of health and safety for all of its physical locations.

43. Accordingly, MITRE's cited reason was either intentionally or recklessly ignorant of the reality of Mrs. Harvey's remote work: a fact she repeatedly reiterated throughout the request process.

44. On November 22, 2021 MITRE sent Mrs. Harvey a letter (Ex. G) terminating her effective November 23, 2021.

45. MITRE fired Mrs. Harvey because they were uncomfortable with her decision to not get vaccinated and the sincerely held religious beliefs which she expressed as the reason for doing so.

46. Worse, MITRE, in its interviews, denial, and later communication with Mrs. Harvey's legal counsel, appeared to baselessly accuse Mrs. Harvey of being insincere in her faith, and deny her an accommodation without an explanation of their lack of confidence in her religious sincerity.

47. Contrary to MITRE's assessment Mrs. Harvey (1) holds a sincere religious conviction against receiving the vaccine, (2) she informed her employer of this conviction and further supported her beliefs with scriptural references and the endorsement of her religious leader of the church she attends, and (3) she was discharged for not receiving the vaccine.

48. The effect of the practices complained of in the paragraphs above has been to deprive Mrs. Harvey of equal employment opportunities and otherwise adversely affect her status as an employee because of her religion.

49. The unlawful employment practices complained about in the paragraph above, were and are intentional, and made with malice and/or reckless indifference to the federally protected rights of Mrs. Harvey.

**<u>PRAYER FOR RELIEF</u>**

Wherefore, the Plaintiff respectfully request that this Court:

A.      Order Defendant to make whole Mrs. Harvey by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices.

B.      Order Defendant to make whole Mrs. Harvey by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs above, in amounts to be determined at trial.

C.      Order Defendant to make whole Mrs. Harvey by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

D.      Order Defendant to pay Mrs. Harvey punitive damages for the malicious and reckless conduct described in paragraphs 10 through 49 this Complaint, in amounts to be determined at trial.

E.      Grant such further relief as the Court deems necessary and proper in the public interest.

F.      Award Plaintiff's attorney's fees associated with the costs of this action.

Respectfully submitted,

/s/ William R. Thetford Jr., Esq. (VSB #92558)
Simms Showers, LLP
305 Harrison Street, SE, 3rd Floor
Leesburg, VA 20175
Phone: 703-771-4671
Fax: 703-771-4681
WRT@simmsshowerslaw.com